UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WILLIE SIMS, JR.,

       Petitioner,

v.                                    Case No. 2:11-cv-211
                                    HON. GORDON J. QUIST

GREG MCQUIGGIN,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Willie Sims, Jr., filed this petition for writ of habeas corpus challenging his conviction for first degree murder, MCL § 750.316(1)(a), two counts of assault with intent to commit murder, MCL § 750.83, carrying a concealed weapon, MCL § 750.277, and possession of a firearm during the commission of a felony, MCL § 750.277b. After his jury conviction, Petitioner was sentenced to concurrent prison terms of life without parole for murder, 200 to 300 months for each assault conviction, 19 to 60 months for the concealed weapon conviction, and a consecutive two-year term for the felony firearm conviction. Respondent has filed an answer and has complied with Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts.

Petitioner appealed his conviction asserting a claim that the evidence was insufficient to establish premeditation and deliberation to support his first degree murder conviction. The Michigan Court of Appeals affirmed Petitioner's conviction on September 14, 2006, explaining:

> Viewed in a light most favorable to the prosecution, the evidence was sufficient to allow a rational trier of fact to conclude that defendant had both the time and the capacity necessary to engage in the reflection necessary to support the verdict. According to

> eyewitnesses, defendant was not directly involved in the argument preceding the shooting, but was instead observing from the sidelines. After the arguing parties began to recede, defendant stepped forward and shot Ford in the chest from approximately four feet away. There was testimony that Ford and his friends were unarmed and that they were not making any threats. There is no evidence of a struggle, attack, or surprise that would have prompted defendant to fire without thinking. *See People v. Jones*, 115 Mich App 543, 553; 321 NW2d 723 (1982). The evidence was sufficient to support a finding that defendant was able to engage in the "cool and orderly reflection" necessary to support a finding of first-degree, premeditated murder.

Docket #19. The Michigan Supreme Court denied Petitioner's application for leave to appeal on January 29, 2007. Docket #20. Petitioner filed a motion for relief from judgment in the trial court which was denied under MCR 6.508(D)(3). The Michigan Court of Appeals denied Petitioner's delayed application for leave to appeal "for failure to meet the burden of establishing entitlement to relief under MCR 6.508(D)." Docket #21. The Michigan Supreme Court denied Petitioner's application for leave to appeal under MCR 6.508(D).

The petition raises the following issues:

I. The state courts made objectively unreasonable determination of facts in light of the record and denied due process.

II. Ineffective assistance of appellate counsel.

III. Interfere with cross-examination and presentation of evidence.

IV. Prosecutor misconduct.

V. Prejudicial hearsay and violation of confrontation rights.

VI. Ineffective assistance of counsel.

VII. Insufficient evidence of murder.

VIII. Other matters involving unlawful incarceration due to Sixth and Fourteenth Amendment violations.

- 2 -

In April of 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Because this petition was filed after the effective date of the AEDPA, this Court must follow the standard of review established in that statute. Pursuant to the AEDPA, an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This provision marks a "significant change" and prevents the district court from looking to lower federal court decisions in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). To justify a grant of habeas corpus relief under this provision of the AEDPA, a federal court must find a violation of law "clearly established" by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). The Supreme Court held that a decision of the state court is "contrary to" such clearly established federal law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Id.* A state court decision will be deemed an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* A federal habeas court may not find a state

- 3 -

adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 412. Rather, the application must also be "unreasonable." *Id.* Further, the habeas court should not transform the inquiry into a subjective one by inquiring whether all reasonable jurists would agree that the application by the state court was unreasonable. *Id.* at 410 (disavowing *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996)). Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy,* 160 F.3d 1131, 1134 (6th Cir. 1998). The habeas corpus statute has long provided that the factual findings of the state courts, made after a hearing, are entitled to a presumption of correctness. This presumption has always been accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989), *cert. denied*, 495 U.S. 961 (1990). Under the AEDPA, a determination of a factual issue made by a state court is presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 527 U.S. 1040 (1999).

Respondent argues that each of Petitioner's claims was procedurally defaulted. Although Petitioner's motion for relief from judgment was denied on appeal under MCR 6.508(D) in a short unexplained order, the trial court had held a Ginther hearing and rejected Petitioner's claims in an explained opinion under MCR 6.508(D)(3). Petitioner argues that the trial court erred in making this ruling and failed to explain whether the claims were jurisdictional or not jurisdictional. Petitioner argues that issues V and VI constitute jurisdictional defects that cannot be

- 4 -

procedurally defaulted and that each of his claims was not procedurally defaulted. Further, Petitioner argues that ineffective assistance of appellate counsel, for failing to raise the issues asserted in this petition, is good cause to overcome the claimed procedural default.

When a state-law default prevents further state consideration of a federal issue, the federal courts ordinarily are precluded from considering that issue on habeas corpus review. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982). To determine whether a petitioner procedurally defaulted a federal claim in state court, the Court must consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the last state court rendering judgment on the claim at issue actually enforced the state procedural rule so as to bar that claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim. *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster v. Adams*, 324 F.3d 423, 436-37 (6th Cir. 2003); *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice. *See House v. Bell*, 547 U.S. 518, 536 (2006); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52. The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence. *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it is

- 5 -

more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

The doctrine of procedural default is applicable where a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). To determine whether Petitioner has been denied relief based on a procedural default, we look to the last "reasoned judgment rejecting the [federal] claim." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). The doctrine is applicable if "the last state court to review [the prisoner's] conviction 'clearly and expressly' relied on [the prisoner's] procedural default in its decision affirming Petitioner's conviction." *Rust v. Zent*, 17 F.3d 155, 161 (6th Cir. 1994).

In *Guilmette v. Howes*, 624 F.3d 286, 289-90 (6th Cir. 2010), the Sixth Circuit, in an *en banc* decision, held that brief form orders by the Michigan appellate courts invoking Mich. Ct. R. 6.508(D) are unexplained orders within the meaning of *Ylst*, 501 U.S. at 803. Such form orders are presumed to uphold or reject the last reasoned decision below. *Guilmette*, 624 F.3d at 291-92 (citing *Ylst*, 501 U.S. at 803). As a result, absent an explained decision from a lower Michigan court applying the procedural prohibition of Rule 6.508(D), the federal court may not invoke procedural default to dispose of a habeas claim that has been rejected by the Michigan courts on the grounds of MCR 6.508(D). *See also McClellan v. Rapelje*, No.11-1841, 2013 WL 135362, at *4 (6th Cir. Jan. 11, 2013) (holding that a lower court decision that explicitly denies relief under an established state procedural rule overcomes the presumption set forth in *Werth v. Bell*, 692 F.3d 486, 493 (6th Cir. 2012) (holding that "an unexplained summary order [of a state appellate court] is an adjudication on the merits for AEDPA purposes)).

- 6 -

In *Amos v. Renico*, 683 F.3d 720, 727 (6th Cir. 2012), the Sixth Circuit recognized that its decision in *Guilmette* overturned the prior law of the circuit which held that an appellate court's invocation of MCR 6.508(D) amounted to an express reliance on a procedural default.  The trial court did explain that Petitioner procedurally defaulted his claims and relied expressly on MCR 6.508(D)(3).  "[W]here, as here, the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits."  *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).  Nevertheless, whether Petitioner's claim is considered procedurally defaulted or not, it is clear that Petitioner's claims lack merit not only to overcome his procedural default, but even when considered solely on the merits as if he did not procedurally default his claims.

Petitioner claims that the trial court erred in sustaining the prosecutor's objection to defense counsel's questioning of a witness about hearing two different gunshots.  Further, Petitioner argues that defense counsel was prevented by the court from cross-examining Detective Marcel Holloway in more detail about statements Petitioner made that did not incriminate Petitioner and that were not brought out on direct examination by the prosecutor.

Matters relating to the presentation of evidence generally involve state law and  are not matters for federal court habeas review.   "[S]uch an inquiry . . . is no part of a federal court's habeas review of a state conviction."  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).  In *Estelle v. McGuire*, the Supreme Court addressed the issue of whether the admission of evidence in violation of California state law entitled a petitioner to habeas corpus relief.

> We have stated many times that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102, 111 L. Ed. 2d 606 (1990); see also *Pulley v. Harris*, 465 U.S. 37, 41, 104 S. Ct. 871, 874-75, 79 L. Ed. 2d 29 (1984). Today, we reemphasize that it is not the province of a federal

habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21, 96 S. Ct. 175, 177, 46 L. Ed. 2d 162 (1975) (per curiam).

*Estelle v. McGuire*, 502 U.S. at 67-8.

The appropriate inquiry is whether the allegedly improper admission of evidence violated the petitioner's constitutional rights.  *Estelle v. McGuire*, 502 U.S. at 68.  A federal court will grant habeas corpus relief only where a violation of the state's evidentiary rule results in the denial of fundamental fairness, and therefore, a violation of due process.  *Brown, III v. O'Dea*, 187 F.3d 572, 578 (6th Cir. 1999) (citing *Cooper v. Sowders*, 837 F.2d 284, 287 (6th Cir. 1988)).

"The standard in determining whether the admission of prejudicial evidence constitutes a denial of fundamental fairness is whether the evidence is 'material in the sense of a crucial, critical highly significant factor.'" *Leverett v. Spears*, 877 F.2d 921, 925 (11th Cir. 1989) (quoting *Redman v. Dugger*, 866 F.2d 387, 390 (11th Cir. 1989)).

*Brown, III v. O'Dea*, 187 F.3d at 578.

Witness Arnon Lake testified about what he saw and heard during the early morning hours of April 18, 2004, in Lansing, Michigan.  Contrary to Petitioner's argument, the court's ruling regarding the testimony of Witness Lake was a correct ruling and a correct application of state evidentiary law.  The entire portion of the transcript reveals no error.

Q.     Okay.  Do you recall how many shots you heard?

A.     There were two -- sounded like two different shots.  First one was kind of small.  That was about two or three, and after that it was two or three more.

Q.     Two or three shots; two or three shots.  Something like that?

A.     Yeah.

Q.      There is anywhere from four to six shots that you recall hearing?

A.      Yes, yes.

Q.      Could have been more?

A.      Yes.

Q.      Okay.  Um, did you notice any difference in the sound of the shots that you heard?

A.      One sounded more deeper, more powerful than the other one, which would be the second set of shots.

Q.      Okay.  And clearly as you recall, then, two different guns that you heard?

A.      Yes.

Q.      All right.  Um, you didn't see any –

MR. MATWIEJCZYK:      I guess I would object to that characterization.  I think it was two different sounds.  I don't think the witness testified it was two different guns.  It's just -- it is an important point.

BY MR. REYNOLDS:        Did the sounds appear to come from the same gun to you?

THE COURT:        Well --

MR. MATWIEJCZYK:        I'd like a ruling on the objection.

THE COURT:        I didn't rule on the objection.  But do you have a response to the objection?

MR. REYNOLDS:      I do.  I think the witness can describe what he heard.  He heard two different sounds.  Deeper.  Later he came to a conclusion.  If he wants to object, it's his opinion, that's fine.  I think it's admissible.  I think this witness can testify to what he heard.

MR. MATWIEJCZYK:        I think that's fine.  The witness can testify as long as Mr. Reynolds doesn't testify to what it is.  He said two different sounds, and that's different than two different guns.

- 9 -

THE COURT:        Well, I think it's obvious the witness wouldn't know if it's one gun or two guns or five guns.  I think he can just testify as to he heard some sounds.

THE WITNESS:        Right.

THE COURT:        And, you know, it might sound different if they're coming from different distances or different locations.

MR. MATWIEJCZYK:        My point is, your Honor, Mr. Reynolds stated two different guns.  That wasn't said.  It was two different sounds.  That's my objection.

THE COURT:        Okay.  I think I'm going to sustain it, as far as two different guns.

BY MR. REYNOLDS:

Q.        Would you describe the difference in sounds that you heard, Mr. Lake.

A.        The first sounded like it came from closer by the parking lot by Oldsmobile, and the one that was powerful came over closer to where we were at where the men was arguing.

Q.        Can you show us on there the first one?

A.        Right around in there.

Q.        And the second one?

A.        Second one is about right there still.

Q.        I'm sorry, I didn't see that.

A.        Right over in there somewhere.

Q.        Okay.  When you said deeper, can you explain a little bit more about what you heard that was different?

A.        The first one kind of sounded like it was hollow, and the other one seemed like it was just more of a bang to it.

Q.        So you have your back to these fellows?

A.     Mm-hmm.

Q.     You start walking back towards the west?

A.     Mm-hmm.

Q.     You hear these shots, correct?

A.     Yes.

Q.     From two different places?

A.     Yes.

MR. MATWIEJCZYK:     I'll object to the summary given by Mr. Reynolds.  It's asked and answered.

MR. REYNOLDS:     This is cross-examination.  I think I'm entitled to a little bit of leeway.

MR. MATWIEJCZYK:     Cross-examination  isn't  asking the same question five times either.  Asked and answered.

THE COURT:     Okay.  Move on.

Trial transcript at 351-354, docket #10.

Witness Lake testified that he heard two different sounds.  Defense counsel wanted Witness Lake to testify that there were two different guns.  The court sustained the prosecutor's objection because the question posed assumed that Witness Lake testified that there were two different guns instead of two different sounds.  No foundation was laid to establish that Witness Lake could know that the sounds he heard came from two different guns.  Moreover, unless Witness Lake was an expert witness on guns and gun sounds or actually saw two different guns, which was never established, the court's ruling was correct.  Further, this is simply a state law evidentiary matter.  Moreover, contrary to Petitioner's claim that "[i]mplicite in this ruling is a message to the jury that two guns were not involved and defense counsel is overreaching with the 'facts,'" the more likely

- 11 -

juror interpretation of the evidence is exactly what defense counsel intended, that there were two different guns based upon the different sounds that were heard.  Moreover, this interpretation is consistent with the firearms expert who testified that at least two different guns were fired. Nevertheless, this claim was simply a matter of state law and cannot rise to the level of establishing a fundamentally unfair trial.

Similarly, the alleged error regarding the denial of admission of Petitioner's statements to Detective Marcel Holloway were matters of state evidentiary interpretation and could not rise to an actionable habeas claim.  Petitioner claims that he was denied the ability to present a defense by the court's ruling limiting his cross-examination. The court denied as hearsay the admission of a one-page transcribed statement made by Petitioner.  Attached as an exhibit to docket #1; trial transcript at 1054, docket #14.  Detective Holloway testified consistent with the statement, but also testified that other statements were made by petitioner.  Further, a videotape and transcript of the interview was admitted into evidence and played before the jury during the examination of detective Read who was also present during Petitioner's interview.  Trial transcript at 1200-1201.  Petitioner's assertion of constitutional error is clearly without merit.

Petitioner also claims that Witness Jasmine Chase and Witness Natasha Brown were allowed to testify about an incident where someone pointed a finger at them while driving in a vehicle next to their vehicle.  This was simply a matter regarding an evidentiary decision by the trial court.  Petitioner has not shown that this rose to a violation of his fair trial rights or a violation of any constitutional right.  Moreover, Petitioner cannot establish that he was in any way prejudiced by this testimony.

Petitioner asserts that the prosecutor engaged in misconduct by soliciting evidence from Witness Natasha Brown that she had been threatened about her court testimony and by

improperly arguing during closing argument that none of the witnesses stated that anyone other than Petitioner was shooting a gun in the parking lot on April 18, 2004.

Misconduct by a prosecutor can rise to the level of a due process violation. *Lundy v. Campbell*, 888 F.2d 467, 474 (6th Cir. 1989). However, before habeas corpus relief becomes available, the misconduct must be so egregious as to deny petitioner a fundamentally fair trial. *Serra v. Michigan Dep't of Corrections*, 4 F.3d 1348, 1355 (6th Cir.1993). The habeas court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11-12 (1985). In addition, the court may view any misconduct in light of the strength of the competent proofs tending to establish guilt. *See Angel v. Overburg*, 682 F.2d 605, 608 (6th Cir. 1982) (*en banc*). "When a petitioner makes a claim of prosecutorial misconduct, 'the touchstone of due process analysis ... is the fairness of the trial, not the culpability of the prosecutor.'" *Serra*, 4 F.3d at 1355 (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)). "This court has been reluctant to grant habeas petitions based on improper prosecutorial statements at closing argument." *Wilson v. Mitchell*, 250 F.3d 388, 398 (6th Cir. 2001).

Witness Brown testified that she received threatening telephone calls to her on her cell phone. Trial transcript at 629, 650-652. During the trial Brown testified:

A.  No. I received it on my cell phone.

Q.  Okay. did you receive a call on your cell phone?

A.  Yes.

Q.  Okay. What was that about?

- 13 -

> A.      Someone called me asked me, did I know -- asked me, did I know Esco or Willie.  I said "No."  They said, "You sure you don't know him?"  I said "Yes."  They said, "Well, I know you know him because he the one that did the shooting, and all I'm asking you to do is when you go to court, say you didn't see nothing, and I'll give you as much bread as you want."  And I asked them how did they get my number, and he said Willie just wrote him a letter and asked to call.

Trial transcript at 629.  Petitioner argues that this was prejudicial testimony because the caller could have been trying to frame Petitioner and there was no testimony linking Petitioner to the cell phone calls.  Petitioner has not shown that the testimony was factually incorrect or that the prosecutor elicited knowingly false information from the witness.  The prosecutor did not commit error by asking Witness Brown about the telephone conversation and whether she felt threatened about giving testimony in court.

Similarly, the prosecutor's argument about testimony regarding the shooting during closing argument was proper and factually correct.  The prosecutor had every right to argue that Petitioner was the only individual, observed by the testifying witnesses, shooting in the parking lot.  Moreover, the fact that there was more than one type of gun used that evening does not alone indicate that there was more than one shooter.  Just as Petitioner had the right to argue that the evidence established that there was more than one shooter that morning, the prosecutor had the right to argue that the evidence showed that there was only one shooter.  Moreover, the jury was advised that the closing statements of the attorneys were not evidence but simply arguments of the prosecution or defense legal theories in the case.  Trial transcript at 1343, docket # 16.

Petitioner argues that there was insufficient evidence presented at trial to convict him of shooting Marcus Ford.  A Section 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "'the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan [trial court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)).

The trial court denied Petitioner's post conviction motion that there was no evidence presented at trial identifying Petitioner as the shooter. The trial court denied the motion concluding:

> In this case, there was evidence from the witnesses -- a witness testified that Defendant had the gun, that he had his back to someone, I believe it was to the victim, Tamarcus (sic) Ford, and then he turned around, pointed the gun directly at the victim, and shot him, shot him right in the chest. It went right through the heart based on the pathologist's testimony. So the Court believes there was sufficient evidence where a rational trier of fact could determine that the elements of that offense had been established.

- 15 -

Also in regard to the identification of the Defendant, there were at least two witnesses who described Defendant -- almost everyone described him, I believe, as a small, skinny black male.  Um, there weren't any witnesses who testified that there was anyone else shooting in the parking lot that night.

Also, Defendant made a confession to Officer Holloway.  There was some confusion regarding Officer Holloway's testimony, if there was a videotape of a pre-interview and the interview, but it was readily -- er, easily explained by Detective Read that there was no tape of a pre-interview.  That it was just one videotape of Defendant's confession.

And the Court also notes that the jury found the Defendant not guilty of Count 3.  I believe that was the assault with intent to murder Raynika Brown, and that accounts for the second bullet which was found in her knee.  And the remaining bullets were all .22 caliber, and the Defendant admitted during his confession that he was using a .22 caliber, black handgun.  And the witnesses also described the gun as a small, black handgun.

In the opinion of the undersigned, there was sufficient evidence, when taken in the light most favorable to the prosecution, to show that Petitioner killed Marcus Ford.  More importantly, Petitioner has failed to establish that the Michigan Courts' decisions were contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Petitioner claims that he received ineffective assistance of both trial counsel and appellate counsel.  In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Petitioner argues that his trial counsel was ineffective in cross-examining Witness James Dunigan.  Witness Dunigan in describing the shooter of Marcus Ford testified:

> Q.    And do you recall, um, how big he was?
>
> A.    He was, um, about, I'd say about -- size or height?
>
> Q.    Well, let's go with -- let's start with height.
>
> A.    Well, from what I can tell, he was about -- I'd say about 5'7", 5'8".
>
> Q.    And what kind of clothes was he wearing?
>
> A.    He had on dark jeans and a white T-shirt.  Really big white T-shirt.
>
> Q.    What about the jeans?
>
> A.    They was -- I believe -- I'm not sure if they were just dark blue or black, but it was night sometime.
>
> Q.    Were they tight fitting or loose?
>
> A.    No.  They were very baggy jeans.

- 17 -

Q.     And from the baggy clothes, were you able to given an estimate maybe on the weight from that?

A.     I can't recall.  I'm not sure.

Q.     And what about the age of this person?

A.     He looked to e around my age, around nineteen to twenty-one.

Q.     As far as -- as far as build, what kind of build did this person have?

A.     Like, he -- like, wasn't real big.  He wasn't like, real -- he was kind of small, like, but his clothes were so baggy.  Though, his arms was, like, little, but he wasn't real big.  He was, like, very, very small.

Q.     Do you recall back in April the description you gave to the detectives about the shooter?  Do you remember exactly what you said?

A.     Not exactly.

Q.     Would it refresh your memory if I showed it to you?

A.     Yeah.

MR. REYNOLDS:     Have you got a page.

MR. MATWIEJCZYK:        Page 7.

BY MR. MATWIEJCZYK:

Q.     If you can just read this portion, highlighted portion to yourself, and tell me if that refreshes your memory.

A.     Okay.

Q.     Does that refresh your memory?

A.     Yes.

Q.     And how did you describe him to Detective Read?

A.     As, um, being skinny.  Yeah, short.

Q.      Anything else?

A.      Real short.

Q.      Okay.  Anything about being small?

A.      I don't remember.

Q.      Would it refresh your memory if I let you see it again?

A.      Yeah, yeah.

Q.      Just read that portion to yourself again and tell me if that refreshes your memory.

A.      Yes.  It was a small fellow.

Q.      A small fella?

A.      Yes.

Trial transcript at 816-818, docket #13.

On cross-examination, defense counsel asked whether Dunigan first reported to police that the shooter was 5'8 and weighed 185-190 pounds.  Witness Dunigan responded that he did not recall.  Trial transcript at 832, docket #13.  Defense counsel wanted to re-call Officer Terrill to impeach Witness Dunigan.  However, the trial court indicated that there was nothing to impeach because Dunigan's testimony was not inconsistent when he testified that he did not recall telling the officers that the shooter was 5'8" and weighed 185-190 pounds.  Petitioner argues that counsel was ineffective because counsel should have established a foundation to re-call Officer Terrill to impeach Witness Dunigan's testimony.  Further, Petitioner claims that counsel should have presented testimony or the statement that Witness Dunigan gave to Detective Holloway which indicted that a "muscular," "light skinned" man shorter than 5'10" came up to the car and started talking to Nekia.  Attached as an exhibit to Docket #1.

- 19 -

In the opinion of the undersigned, neither of these alleged failures, especially where other witnesses testified to the description of the shooter, show that counsel was ineffective. Petitioner has not shown any constitutional failure regarding the cross examination of Witness Dunigan.  Moreover, Petitioner has failed to show that counsel was ineffective for failing to object to the alleged prosecutorial misconduct issues presented in this petition.  As explained, Petitioner has failed to show prosecutorial misconduct.  Petitioner's assertions that he received ineffective assistance of trial counsel is not supported by the record.  Moreover, Petitioner's assertion that he received ineffective assistance of appellate counsel is not supported by the record.  Petitioner asserts that appellate counsel failed to consider and present the issues raised in his motion for relief from judgment and presented in this petition.

An appellant has no constitutional right to have every non-frivolous issue raised on appeal.  "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions."  *Strickland*, 466 U.S. at 688.  As the Supreme Court recently has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong where the attorney presents one argument on appeal rather than another.  *Smith v. Robbins*, 528 U.S. 259, 289 (2000).  In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present."  *Id.*  In the opinion of the undersigned, Petitioner cannot establish that his appellate counsel was ineffective.

In summary, it is clear that Petitioner has procedurally defaulted each issue presented in this petition, except Petitioner's ineffective assistance of appellate counsel issue. Petitioner cannot establish cause and prejudice for his procedural default. Regardless of Petitioner's procedural default, in the opinion of the undersigned, Petitioner cannot show that his constitutional rights were violated based upon the merits of the issues presented in this petition.

Accordingly, the undersigned concludes that Petitioner's claims are without merit and therefore recommends that this Court dismiss the petition with prejudice.

In addition, if Petitioner should choose to appeal this action, I recommend that a certificate of appealability be denied as to each issue raised by the Petitioner in this application for habeas corpus relief. Under 28 U.S.C. § 2253(c)(2), the court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the undersigned has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The undersigned concludes that reasonable jurists could not find that a dismissal of each of Petitioner's claims was debatable or wrong. Therefore, the undersigned recommends that the court deny Petitioner a certificate of appealability.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  May 29, 2014